STATE of Maine

v.

Cheryl DEDEKIAN.

Supreme Judicial Court of Maine.

Argued June 13, 1996.

Decided July 22, 1996.

Andrew Ketterer, Attorney General, Charles K. Leadbetter (orally), Linda Conti, Assistant Attorneys General, Augusta, for the State.

John D. Pelletier (orally), Goodspeed & O'Donnell, Augusta, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

Defendant Cheryl Dedekian appeals from an order of the Superior Court (Kennebec County, *Mead, J.*) finding her incompetent to stand trial and ordering her recommitted to the custody of the Commissioner of Mental Health and Retardation (the Commissioner). Dedekian argues on appeal that the court was required to release her and to dismiss the indictment against her because she had previously been found incompetent and committed for over one year. The State argues that the applicable statute does not require the court to dismiss the indictment. We agree, but we also conclude that the statute does not require Dedekian's release, and therefore we affirm the order of the Superior Court.

The facts relevant to this appeal are not in dispute. In January 1993 defendant Cheryl Dedekian was indicted for manslaughter (17–A M.R.S.A. Section 203(1)(A) (Supp.1995)), in connection with the death of her son. The Superior Court, pursuant to 15 M.R.S.A. Section 101–B (Supp.1995)[1], ordered a psychological examination of defendant to deter-

---

1. The relevant text of this section is as follows:

**Section 101–B. Mental examination and observation of persons accused of crime**

**1. Court order; permissive.** The District Court or the Superior Court having jurisdiction in any criminal case for cause shown may order the defendant examined to determine the defendant's mental condition with reference to the issues of competency, criminal responsibility, abnormal condition of mind and any other issue involving the mental or emotional condition of the defendant. The examination may be conducted by the State Forensic Service or by a psychiatrist or licensed clinical psychologist independent of the State Forensic Service.... The opinion of the examiner or examiners relative to the competence, criminal responsibility, abnormal condition of mind or any other mental or emotional condition of the respondent must be reported without delay to the court following examination, together with copies to counsel for the respondent and counsel for the State.

15 M.R.S.A. Section 101–B(1) (Supp.1995).

mine whether she was competent to stand trial. After a hearing was held on August 4, 1993, the court (*Chandler, J.*) found that defendant was not competent to stand trial. Defendant was committed to the custody of the Commissioner, and placed at the Augusta Mental Health Institute (AMHI).[2]

A second competency hearing, the subject of the present appeal, was held on August 16, 1994 and continued on September 6, 1994. The court entered its order on September 14 finding that "[d]efendant is incompetent to stand trial at the present time, but may be rendered competent within the foreseeable future." The court noted that the finding of defendant's incompetence was due in part to her distrust of and refusal to cooperate with the forensic service doctors, whom she believed were in conspiracy against her with the personnel at AMHI. Defendant was recommitted to the Commissioner "for a period not to exceed one year for observation, care and treatment." From this order, defendant appeals.

■ Defendant argues that 15 M.R.S.A. Section 101–B(4)(A) imposes a one-year time limit on the involuntary commitment of a defendant who is not competent to stand trial. Defendant argues that the statutory phrase "[s]aid commitment shall not exceed one year in duration" is absolute, and was enacted in response to the holding in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32

L.Ed.2d 435 (1972). In that case, the court held that indefinite commitment of a defendant incompetent to stand trial is a violation of the equal protection clause and the due process clause of the United States Constitution. We conclude that the order of the Superior Court correctly interprets section 101–B and does not violate the holding in *Jackson.*

In 1972, the United States Supreme Court in *Jackson* addressed the constitutionality of an indefinite commitment of a criminal defendant who was not competent to stand trial. Defendant Jackson had been charged with two counts of robbery which, on their facts, were tantamount to simple purse-snatching. Jackson was a developmentally delayed, deaf mute with the I.Q. of a pre-schooler. He was unable to read or write, and knew only the most primitive forms of sign language. Because of his mental infirmity, it was improbable that he would ever learn true sign language so as to be able to communicate effectively with counsel. It was also determined that his mental infirmity alone precluded any comprehension of the nature of the proceedings against him. For these reasons, Jackson was deemed incompetent to stand trial, and was committed. *Id.* at 717–19, 92 S.Ct. at 1847–48. Indiana law provided that a defendant like Jackson would be committed until such time as he became competent to stand trial. *Id.* at 719–22, 92 S.Ct. at 1848–49.

2. The relevant portion of the statute provides as follows:

**4. Finding of incompetence, custody; bail.** If after hearing ... the court finds that any defendant is incompetent to stand trial, it shall continue the case until such time as the defendant is deemed by the court to be competent to stand trial and may either:

**A.** Commit the defendant to the custody of the Commissioner of Mental Health and Mental Retardation to be placed in an appropriate institution for the mentally ill or the mentally retarded for observation, care and treatment. The commitment shall not exceed one year in duration. At the end of 30 days or sooner, and again in the event of recommitment, at the end of 60 days and one year, the State Forensic service shall forward a report to the Commissioner of Mental Health and Mental Retardation relative to the defendant's competence to stand trial and its reasons therefor. The commissioner shall without delay set a date for and

hold a hearing on the question of the defendant's competence to stand trial and shall receive all relevant testimony bearing on the question. If the court determines that the defendant is not competent to stand trial, but there does exist a substantial probability that the defendant will be competent to stand trial in the foreseeable future, it shall recommit the defendant to the custody of the Commissioner of Mental Health and Mental Retardation to be placed in an appropriate institution for the mentally ill or the mentally retarded for observation, care and treatment. If the court determines that the defendant is not competent to stand trial and there does not exist a substantial probability that the defendant can be competent in the foreseeable future, the court shall dismiss all charges against the defendant and notify the appropriate authorities who may institute civil commitment procedures for the individual; ...

15 M.R.S.A. Section 101–B(4)(A) (Supp.1995).

The Supreme Court noted that, in light of Jackson's condition, it was highly unlikely that he would ever become competent, thus resulting in the equivalent of a permanent civil commitment without any finding that he was dangerous to himself or others, and without the procedural safeguards and opportunities for release afforded to those persons who have been civilly committed. The Court held that such disparate treatment of Jackson, based solely on his status as a criminal defendant, constituted a denial of equal protection. *Id.* at 730, 92 S.Ct. at 1854. The Court also held that indefinite commitment on the grounds of incompetency alone, without some showing of dangerousness to self or others, or some showing of the rehabilitative benefits to be secured by commitment, is a denial of due process. *Id.* at 731, 92 S.Ct. at 1854. The court stated that

> a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.

*Id.* at 738, 92 S.Ct. at 1858. The Court declined to establish an arbitrary time limit for what would be a "reasonable time," but ruled that, because Jackson had been committed for three and one half years, and the record clearly showed that he was not going to become competent, any further commitment based solely on his incompetency was unconstitutional. *Id.* at 738–39, 92 S.Ct. at 1858–59.

At the time of *Jackson*, the law in Maine, similar to that in Indiana, provided for an indefinite commitment until such time as the defendant became competent to stand trial,

with annual reviews of the defendant's condition. In response to *Jackson*, the Legislature amended the statute "to bring mental health laws into compliance with constitutional requirements as interpreted by the federal courts." L.D. 2034, enacted as P.L.1973, c. 547. The significant changes included removal of the language providing for indefinite commitment with annual review, and insertion of the provision that the commitment following the court's determination of incompetency "shall not exceed one year in duration." On day 30 of the commitment, on day 60, and at the end of the year, the Commissioner is required to file a report on defendant's competency. If at *any* time the court determines that the defendant is not competent to stand trial and also that there is no substantial probability that the defendant will be competent in the foreseeable future, then the charges are to be dismissed and the court may set in motion the appropriate civil commitment procedures. The statute, however, also provides that, if the court determines that the defendant is not currently competent "but there does exist a substantial probability that the defendant will be competent to stand trial in the foreseeable future, it shall recommit the defendant." 15 M.R.S.A. § 101–B(4)(A).

We do not read the one-year limit in the statute as an absolute maximum, nor is such a reading constitutionally required. It is permissible under the terms of the statute to recommit a defendant after the expiration of one year provided there is a substantial probability that the defendant will become competent in the foreseeable future. *Jackson* imposes the requirement that the court decide whether defendant is permanently incompetent within a reasonable time. The limit chosen by the Maine Legislature requires the court to determine at the end of one year whether defendant is likely to become competent to stand trial in the foreseeable future. Here, in substance, the court has made the appropriate determination. The court found specifically that defendant showed promise in her development, and concluded that if certain barriers could be overcome (particularly defendant's distrust of the forensic doctors, her failure to stay on medication, and her antipathy for male coun-

selors) she could become competent in the foreseeable future. Thus, the court did not err in recommitting defendant to the custody of the Commissioner.

Defendant next argues that the court is nonetheless required to dismiss the charges against her because she was not competent to stand trial at the end of one year. We disagree. The statute mandates the dismissal of the charges only if "there does not exist a substantial probability that the defendant can be competent in the foreseeable future." 15 M.R.S.A. § 101–B(4)(A). There are no other circumstances listed in the statute mandating dismissal nor is there a reason to create any. Defendant has not demonstrated any basis for dismissing the indictment against her.

The entry is:

Judgment affirmed.

All concurring.